UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MOHAMED AJAMI,

       Plaintiff,

                                             Civil No. 08-12088
                                             Hon. John Feikens

       v.

CITY OF DEARBORN, *et al.*,

       Defendants.

_____


**OPINION AND ORDER**
**ADOPTING IN PART AND REJECTING IN PART REPORT AND**
**RECOMMENDATION (Dkt. 70), SUSTAINING IN PART OBJECTIONS (Dkt. 71),**
**AND GRANTING IN PART DEFENDANTS' MOTION (Dkt. 61)**


## I. INTRODUCTION

This cause of action arises out of Plaintiff's 42 U.S.C. § 1983 claim for false arrest and state-law claims of false arrest/imprisonment, malicious prosecution, abuse of process, civil conspiracy and negligence/gross negligence. As relevant to this motion, Defendants include three police officers, Daniel Saab, Alan Leveille, and Anne Kanitra, and the City of Dearborn.[1] Plaintiff's claims arise out of an incident on September 2, 2006, during which Plaintiff was taken into police custody and charged with felonious assault and carrying a firearm while committing a felony. Plaintiff alleges that the charges against him were based on falsified evidence.

_____

[1]In his Response to Defendants' Motion for Summary Judgment, Plaintiff stipulated to the dismissal with prejudice of the City of Detroit. All other defendants have been dismissed or defaulted, and are not relevant to the instant analysis. The use of "Defendants" throughout this motion will refer only to the City of Dearborn and the three individual officers.

Defendants filed a Motion For Summary Judgment. (Dkt. 61). The Motion was fully briefed. After a hearing on the Motion, Magistrate Judge Morgan issued a Report and Recommendation (the "Report") (Dkt. 70), in which she recommended that the City of Dearborn be dismissed, but Plaintiff's claims against the officers survive. The officers filed objections (Dkt. 71), and Plaintiff responded (Dkt. 72). For the reasons that follow, I ADOPT IN PART and REJECT IN PART Magistrate Judge Morgan's Report, GRANT IN PART and DENY IN PART Defendants' Motion For Summary Judgment, and DISMISS WITH PREJUDICE Plaintiff's claims against the Dearborn Police Department, City of Dearborn and Officers Leveille and Kanitra.

## II. BACKGROUND

### A. Plaintiff's Prior Altercations

Plaintiff and his former business partner, Defendant Harajli, have a history of altercations. In summary, it appears that after a breakdown in their business relationship, Harajli and another man hired two young men to assault and rob Plaintiff. Apparently, Harajli also asked a witness to falsely testify on his behalf at his criminal trial. In addition, while the criminal charges against Harajli still were pending, Harajli's wife falsely accused Plaintiff of threatening her with a pistol.

Further, it seems Harajli and Defendant Officer Saab have (or had) a separate business relationship.

This background is relevant because Plaintiff alleges that Officer Saab falsified evidence regarding the events of *this case*–which occurred the pendency of the criminal charges against Harajli–to encourage Plaintiff to drop the pending charges against Harajli.

**B.      The September 2, 2006, Incident**

On September 2, 20006, Plaintiff saw a person on his property taking pictures of his home. He was told by a neighbor that the same man had taken photos in the weeks preceding this event. He called 911 and told the City of Dearborn Police Department that he needed police because "some black guy" was taking pictures of his home and he had "problems with the asshole Harajli." The man taking pictures was Alfonso Walker, a process server working for the attorney representing Harajli and attempting to serve Plaintiff with subpoenas for a matter related to that case.

When the 911 operator asked Plaintiff what Walker was wearing in case he left the scene and needed to be identified by the police, Plaintiff responded, "No, he can't leave. I hold him right here." Plaintiff confirmed two more times–including once after Walker stated "I can go if I want"–that he was holding Walker, and Walker "[couldn't] go nowhere."

A few minutes later, Plaintiff's wife called 911 and told the operator, "You guys sent Daniel Saab. We don't want Daniel Saab. We want somebody else." The operator indicated that a second officer was already en route.

Saab was the first officer to arrive. According to Plaintiff and his wife, Saab took Walker to a nearby driveway. Both claim they heard Saab instruct Walker to say that Plaintiff had pointed a pistol at him. Plaintiff, his wife, and two neighborhood friends/witnesses claim that Plaintiff never pointed a gun at Walker, although he did have one in his pocket.

Leveille, the second officer to arrive, interviewed Plaintiff and Walker on the scene. According to the Arrest Report, which has an "Entered Date" within 30 minutes of the first 911 call, Leveille found Plaintiff to be "extremely angry." As Leveille tried to calm Plaintiff and get his story, he repeatedly told Leveille, "you can't tell me what to do." Plaintiff admitted to Leveille that

he decided to confront Walker (with a loaded pistol in his pocket) rather than waiting for the police.

The Arrest Report also recounts Walker's statement made at the scene. Leveille describes that Walker's hand and body were shaking during the interview. Walker said Plaintiff "came out of the house pointing a pistol at him and said he was going to kill Walker if he didn't stop taking pictures of his house." Leveille asked Walker to describe the gun; Walker's description of a "black semi-auto hand gun" matched Plaintiff's pistol seized at the scene. Leveille also asked Walker which hand Plaintiff used to point the gun; Walker correctly indicated Plaintiff used his right hand.

Plaintiff surrendered his pistol "without incident." He was arrested for felonious assault. Plaintiff claims that Saab whispered to him while walking to the police car that "he was not going to like what was about to happen, but all that could change if he changed his mind about testifying." Plaintiff understood this statement to relate to his future testimony against Harajli in Harajli's upcoming criminal trial.

By affidavit, Plaintiff's wife claims that (a) she and two other witnesses observed the entire incident, (b) she told both officers that Plaintiff did not commit assault, and (c) she told both officers that Plaintiff had a history with Harajli, which included prior false accusations by Harajli and others on his behalf. She says Leveille refused to hear her statement and told her to "shut up." She also claims to have told both officers that she "believed Walker worked for Harajli and that Walker's story was fabricated to stop [her] husband . . . from testifying against Harajli."

Notably, however, neither Plaintiff nor his wife claim to have told Leveille that they personally heard Saab instruct Walker to fabricate evidence. Similarly, two other witnesses claim

they never saw Plaintiff with a gun in his hand, but they never had a chance to tell Leveille because he had told Plaintiff's wife and/or the witnesses to shut up.

## C.      Kanitra's Investigation

Officer Kanitra investigated the incident after the fact.

Plaintiff's wife alleges that on the evening of the incident, she went to the police station and told Kanitra (among other things) that she never saw Plaintiff with a gun in his hand that day; she "believed Saab and Walker had concocted their story at the behest of Harajli"; and (unspecified) "Defendants"[2] had made false accusations against Plaintiff on two prior occasions.  Plaintiff's wife also "demanded" that Kanitra file two citizens complaints against Saab: one for his misconduct and conflict of interest arising out of his business relationship with Harajli, and a second for Saab's "criminal acts" against Plaintiff during the incident that day.  Kanitra refused to file the complaints, claiming it was against Dearborn's policy.

The two neighborhood witnesses also claim to have gone to the station that night and told Kanitra that Plaintiff did not have a gun in his hand.  One of the witnesses claims he heard Saab and Walker talking, and he never heard Walker tell Saab that Plaintiff had a gun.  But, that witness does not claim that he heard Saab tell Walker to fabricate the story.  Further, there is no evidence  that the witness shared what he heard (or didn't hear) of the conversation between Saab and Walker with Officer Kanitra.

---

[2]Importantly, the original "Defendants" in this case–to which Plaintiff's wife presumably refers–included Harajli and his wife Baydoun, whom Plaintiff alleges previously falsified allegations against Plaintiff.  There is no evidence suggesting that any of the Defendants relevant to this motion, including Officer Saab, played any role in those earlier events.

In Officer Kanitra's police report, Kanitra recounts a discussion with Plaintiff's counsel, who indicated that Plaintiff previously had been assaulted and was afraid of getting assaulted again, but that Plaintiff never pulled out his weapon during the incident. The report also includes statements from the two witnesses indicating that neither saw Plaintiff use a weapon and a statement from Plaintiff's wife indicating that "the first officer [on the scene] was Cpl. Saab who she did not want at the scene as she stated he is involved in a current case that her husband is involved in." Finally, the report reveals that Walker came to the police station with his attorney the day after the incident. The statement Walker gave at that time matches the story provided in Leveille's Arrest Report. Walker also provided his statement of facts in a letter, which again matches the story in Leveille and Kanitra's reports in all material respects. Walker indicated in the letter that it was "clearly [his] intention to prosecute Mr. Ajami to the full extent of the law."

## D. Sergeant Conrad's Account

Sergeant Conrad of the Dearborn Police was also at the scene of the incident on September 2, 2006. Walker gave the subpoenas that he was attempting to serve on Plaintiff to Conrad.

Within 30 minutes after Plaintiff's first 911 call, and just minutes after the time on Leveille's Arrest Report, Conrad called the Desk Sergeant indicating that, "per [Walker's] statement, he gets stopped by the homeowner [Plaintiff] who comes out the front door with a pistol and this guy points a pistol at the process server and says, 'I'll fucking kill you.'" He also said that Walker "describe[d] the gun pretty well." Conrad suggested that Plaintiff was arrested based on "the fact that [Plaintiff] had the guy with him and [Walker] could describe it." Further, Conrad indicated that Walker accurately described the hand with which Plaintiff pointed the weapon:

> I even asked [Walker], I said, "What hand did the homeowner have
> the gun in?" and he said "He had it in his right hand when he pointed
> it at me."
>
> And I asked [Plaintiff], I said, "What hand do you shoot with?" and
> he said, "I'm right-handed. I shoot with my right hand."

For those reasons, Conrad explained, "[Plaintiff] had to come in." The Desk Sergeant agreed.

## E.    Kanitra's Request for Warrant

The Request for Warrant completed by Kanitra on September 5, 2006, includes most of the same details as Kanitra's investigation report. But Plaintiff's wife's statement that Saab was "involved in a current case that her husband is involved in" was excluded from the Request for Warrant.

## F.    Plaintiff's Acquittal

Walker personally went to the prosecutor's office to request that the office pursue charges against Plaintiff. The prosecutor authorized charges of felonious assault and carrying a firearm while committing a felony.

Plaintiff was arraigned on September 15, 2006, and received a $100 personal bond.

At the Preliminary Examination on November 3, 2006, the prosecution's only witness was Walker, whose version of the events mirrored those in Leveille's report, Kanitra's reports, and his factual statement. The Wayne County Circuit Court judge found probable cause for the arrest.

One February 26, 2007, a bench trial was held on the charges against Plaintiff. The prosecution called only Walker and Leveille. Plaintiff called no witnesses. After an incredibly brief trial (the transcript of which requires only 37 pages), the court found that Walker, a "strange individual," had been trespassing on Plaintiff's property and "raising the suspicion" of Plaintiff. The court further found that the "homestead exemption" for carrying a concealed weapon applied

because Plaintiff was "in his home, [or] maybe went to the sidewalk at best." Based on that justification, Plaintiff was acquitted of both charges.

Notably, although Plaintiff presented a defense at the preliminary examination and bench trial, that defense did not include allegations that Walker had been coached by Saab to fabricate his story. Instead, Plaintiff's counsel argued that the evidence did not prove Plaintiff guilty beyond a reasonable doubt, and Plaintiff was justified in his actions and permitted to act in self defense because Walker was trespassing on his property.

## III. ANALYSIS

### A. Legal Standard Applicable To Motion For Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must view the evidence and any reasonable inferences drawn from the evidence in a light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001). The burden on the moving party is satisfied where there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The Sixth Circuit has explained that:

> The trial court has more discretion than in the "old era" in evaluating the respondent's evidence. The respondent must do more than simply show that there is some metaphysical doubt as to the material facts. Further, where the record taken as a whole could not lead a rational

8

> trier of fact to find for the respondent, the motion should be granted.
> The trial court has at least some discretion to determine whether the
> respondent's claim is "implausible."

*Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087-88 (6th Cir. 1996) (internal alterations and

citations omitted).

Ultimately, the Court must determine whether the evidence presents a sufficient factual

disagreement to require submission of the challenged claims to a jury or whether the evidence is so

one-sided that the moving party must prevail as a matter of law. *Anderson*, 477 U.S. at 252 ("The

mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;

there must be evidence on which the jury could reasonably find for the plaintiff.").

**B.      Legal Standard For Review Of Report And Recommendation**

The filing of timely objections requires this Court to "make a *de novo* determination of those

portions of the report or specified findings or recommendations to which objection is made." 28

U.S.C. § 636(b)(1).  *See United States v. Raddtz*, 447 U.S. 667, 100 S. Ct. 2406, 65 L. Ed. 2d 424

(1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  This *de novo* review, in turn,

requires this Court to re-examine all the relevant evidence previously reviewed by the magistrate

judge to determine whether the recommendation should be accepted, rejected, or modified in whole

or in part.  28 U.S.C. § 636(b)(1).

"A general objection, or one that merely restates the arguments previously presented is not

sufficient to alert the Court to alleged errors on the part of the magistrate judge." *Aldrich v. Bock*,

327 F. Supp. 2d 743, 747 (E.D. Mich. 2004).

**C.      The Report and Recommendation**

**1.      City of Dearborn**

Magistrate Judge Morgan's Report recommends that I grant summary judgment in favor of the City of Dearborn. Plaintiff offered no objections to that recommendation. I have reviewed Magistrate Judge Morgan's recommendation and concur in its analysis. Accordingly, I ADOPT the Report's recommendation and GRANT summary judgment as to Defendant City of Dearborn.

**2.      Dearborn Police Department**

In his Response to Defendants' Motion, Plaintiff has stipulated to the Dismissal with Prejudice of Defendant Dearborn Police Department. Accordingly, the Dearborn Police Department is DISMISSED WITH PREJUDICE.

**3.      The Individual Officers**

For Fourth Amendment purposes, '[p]robable cause necessary to justify an arrest is defined as whether at that moment the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Wilson v. Morgan*, 477 F.3d 326, 333 (6th Cir. 2007) (quoting *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005) (alterations in original)).

Defendants argue that Plaintiff's claims fail because probable cause existed to arrest Plaintiff. In the Report, Magistrate Judge Morgan recited the evidence upon which the officers claimed to rely, including: (1) the 911 transcript wherein Plaintiff repeatedly stated that Walker couldn't leave; (2) Leveille's police report indicating that Walker told the police that Plaintiff had been holding him

at gunpoint with the gun in Plaintiff's right hand; (3) Plaintiff was right handed; (4) Walker accurately described the gun; and (5) Plaintiff was acting hostile, excited, and angry.

But Magistrate Judge Morgan then added that Defendants "ignore[d] evidence demonstrating that [they] conspired to manufacture probable cause." Specifically, according to Magistrate Judge Morgan: (1) Saab directed Walker to say that Plaintiff pointed a gun at Walker; (2) Leveille prevented witnesses from providing statements that Plaintiff never pointed a gun at Walker and that Walker had a history with both Harajli and Plaintiff; (3) the 911 transcript "merely states that plaintiff was holding Walker without mentioning any gun"; and (4) Leveille's police report states that Plaintiff was only physically holding Walker when the police arrived.

Thus, Magistrate Judge Morgan concluded that "a rational trier of fact could find that there was no probable cause to arrest plaintiff." Accordingly, without differentiating among the officers, she recommended that summary judgment be denied as to the individual officers.

Defendants objected, arguing that: (1) collateral estoppel bars Plaintiff's claims; (2) the Magistrate Judge applied the incorrect legal standard in determining whether qualified immunity existed; (3) Officer Kanitra should be dismissed because the evidence does not support the conclusion that she conspired to manufacture probable cause; (4) Officer Leveille should be dismissed for the same reason; and (5) Officer Saab should be dismissed for the same reason.

### a.      Objection #1 - Collateral Estoppel

Defendants argue that the doctrine of collateral estoppel bars Plaintiff from arguing that there was no probable cause to arrest him because he had a chance to litigate that issue at his Preliminary Examination, and that judge concluded that there was probable cause. (Dkt. 71 at 17, citing *Molnar v. Care House*, 359 F. App'x 623 (6th Cir. 2009)). Plaintiff claims this argument is waived because

it was not properly raised before the Magistrate Judge. (Dkt. 72, at 10, citing *Murr v. U.S.*, 200 F.3d. 895, 902 n. 1 (6th Cir. 2000)).

Although Plaintiff generally is correct that an argument not raised before a Magistrate Judge need not be considered by a District Judge in reviewing objections to a Report and Recommendation, I will consider the argument for two reasons: (1) Magistrate Judge Morgan stated on the record that she would consider it in her Report; and (2) neither party will be prejudiced by my consideration of it now.

During the March 31, 2010, hearing on Defendants' Motion for Summary Judgment, Magistrate Judge Morgan specifically addressed the significance of the Sixth Circuit's recent *Molnar* decision, explaining that where the state court did not rely upon an officer's statements to establish probable cause, collateral estoppel bars the plaintiff from arguing that probable cause did not exist in a subsequent § 1983 action. She then asked, "So, essentially, if the [state] court found probable cause [for the criminal charges against Plaintiff], [are] not the false arrest claims [in this case] barred by collateral estoppel?" Neither party responded. Magistrate Judge Morgan then stated that her Report would consider whether collateral estoppel barred the Plaintiff's claims in the instant case, "Anyway, we'll put that in the R&R. People can either file objections or find contrary cases if there are any, or distinguish them, or whatever."

The day after the hearing, Defendants filed a Supplemental Brief arguing that *Molnar* applied to bar Plaintiff's false arrest claims. Despite having explicitly stated that she would consider the case in her Report, Magistrate Judge Morgan dismissed of the argument in a footnote, explaining that Defendant's Supplemental Brief was not a proper supplemental brief, and *Molnar* is distinguishable because "the witness in this case, Walker, is alleged to have conspired with

defendants and to have been specifically directed to lie by Saab." (Dkt. 70, at 16 n. 4). It is clear that the Magistrate Judge *did* consider whether collateral estoppel should bar Plaintiff's false-arrest claims.  Further, she placed the parties on notice that her decision would incorporate this analysis. Thus, I do not find this to be the kind of case where a party asserts a new argument before the District Judge that had not been considered by the Magistrate Judge.

Even if Defendants had first raised the argument in its objections, the Court has discretion to consider any argument in granting summary judgment–even those not raised by the parties–as long as the parties are given an opportunity to introduce any evidence necessary to withstand summary judgment on that ground. *See Excel Energy Inc. v. Cannelton Sales Co.*, 246 F. App'x 953, 959-60 (6th Cir. 2007) ("The key inquiry is whether the losing party was on notice that he had to muster the necessary facts to withstand summary judgment . . . .") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) ("district courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence.")).  In this case, the Magistrate Judge first raised the applicability of collateral estoppel at the motion hearing, Defendants filed a supplemental brief addressing that argument before the Magistrate Judge issued her Report, Defendants again raised it in their objections, and Plaintiff has responded.  Accordingly, neither party will be prejudiced by my consideration of the doctrine at this time.

Under Michigan law, which applies in this case, collateral estoppel "applies when 1) there is identity of the parties across the proceedings, 2) there was a valid, final judgment in the first proceeding, 3) the same issue was actually litigated and necessarily determined in the first proceeding, and 4) the party against whom the doctrine is asserted had a full and fair opportunity

to litigate the issue in the earlier proceeding." *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001) (citing *People v. Gates*, 434 Mich. 146, 156, 452 N.W.2d 627 (1990)).

Generally, where "the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998) (citation omitted). But there are exceptions to this general proposition. "When a plaintiff alleges a police officer acted in bad faith, provided false information, or misstated material facts in order to establish probable cause, collateral estoppel will not apply." *Molnar v. Care House*, 574 F. Supp. 2d 772, 790 (E.D. Mich. 2008).

In this case, each officer is alleged to have engaged in different actions leading to Plaintiff's arrest and prosecution. It is therefore necessary to separately analyze whether collateral estoppel bars claims against any of the officers. Because there is an identity of parties, the state court found probable cause to charge Plaintiff after a preliminary hearing, and Plaintiff does not contend that he was not given a full and fair opportunity to litigate probable cause at the preliminary hearing, Plaintiff must establish that each officer "either acted in bad faith, provided false information, or misstated material facts to establish probable cause." *See id.* at 790-91.

*Officer Kanitra*[3]

Plaintiff does not claim that Kanitra falsified evidence, and there is no evidence that Kanitra acted in bad faith. Instead, Plaintiff suggests that his claims against Kanitra should survive because Kanitra told Plaintiff's wife that she could not file a citizen's complaint against Saab and omitted

---

[3]This analysis incorporates Defendants' Objection #3 (the evidence does not support a finding that Officer Kanitra conspired to manufacture probable cause). For the reasons described herein, that objection is SUSTAINED.

from her warrant request Plaintiff's wife's allegation that Saab "is involved in a current case that her husband is involved in." Defendant Kanitra did fail to include this statement in her warrant request. But, there is no evidence to suggest that this omission or Kanitra's refusal to file a citizen's complaint against Saab contributed to the state court's probable cause determination–which was based entirely on the testimony of Walker. Moreover, Plaintiff "was in possession" of the evidence of Saab's involvement in the case against Harajli "and had ample opportunity to bring that evidence to the judge's attention at the preliminary exam." *Id*. at 791; *see also Molnar*, 359 F.3d at 627 (finding that since the state court did not rely on officer's statements to establish probable cause, collateral estoppel bars re-litigation of that determination in § 1983 false-arrest action against that officer).

When viewed in the light most favorable to the Plaintiff, the evidence fails to support the allegation that Officer Kanitra acted in bad faith, provided false information, or misstated material facts that influenced the state court's determination of probable cause. Collateral estoppel thus bars Plaintiff's claims against Officer Kanitra, and summary judgment is proper. Magistrate Judge Morgan's recommendation to the contrary is REJECTED, and summary judgment is GRANTED in favor of Defendant Kanitra.

*Officer Leveille*[4]

Similarly, Plaintiff has offered no evidence that Officer Leveille fabricated evidence, acted in bad faith, or knowingly misstated material facts that influenced the state court's determination of probable cause. *See Molnar*, 359 F. App'x at 627 (explaining that a state court's probable cause

---

[4]This analysis incorporates Defendants' Objection #4 (the evidence does not support a finding that Officer Leveille conspired to manufacture probable cause). For the reasons described herein, that objection is SUSTAINED.

15

determination does not bar a § 1983 claim that seeks "to demonstrate that the officer *knowingly* misstated material facts in order *to establish* probable cause." (citing *Darrah,* 255 F.3d at 311). Plaintiff alleges only that Leveille ignored witnesses' statements that Plaintiff had not pointed a gun at Walker, and further ignored Plaintiff's wife's statements that Plaintiff had a history with Harajli, which included prior false accusations by Harajli and others on his behalf, and that she "believed Walker worked for Harajli and that Walker's story was fabricated to stop [her] husband . . . from testifying against Harajli." But, as mentioned above, although Plaintiff and his wife each claim to have heard Saab coach Walker to fabricate his story, neither alleges that they told *that fact* to Leveille. Accordingly, Plaintiff has provided no evidence suggesting that Leveille had an apparent reason to believe that Saab fabricated Walker's story in order to manufacture probable cause for Plaintiff's arrest. *See Franklin v. Miami Univ.*, 214 F. App'x 509, 511-13 (6th Cir. 2007) (an eyewitness statement is sufficient to establish probable cause unless, "at the time of the arrest, there is an *apparent reason* for the officer to believe that the eyewitness was lying . . . ." (quoting *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) (emphasis added)).

A reasonable officer in Leveille's position would have believed he had probable cause to arrest Plaintiff based on Plaintiff's statements during the 911 call that Walker could not leave, Walker's statement that Plaintiff had pointed a gun at him, and the objective evidence that Plaintiff possessed a weapon matching the description provided by Walker and used his right hand (the same hand identified by Walker) to hold that weapon.[5] At that point, Leveille had no obligation to investigate further or give any credence to the statements by Plaintiff and his wife that Plaintiff did

---

[5]As further evidence of how a "reasonable officer" would construe these facts, the transcript of the conversation between Conrad and the Desk Sergeant confirms that they each believed Plaintiff "had to come in" based on a subset of this evidence.

not commit assault.  *See id* at 512*; Crockett v. Cumberland College*, 316 F.3d 571, 583 (6th Cir. 2003) ("Once probable cause is established . . . an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." (internal quotation marks and citation omitted)); *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) (an officer "is under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.").  Thus, it cannot be said that Leveille acted in bad faith or knowingly misstated material facts by refusing to take statements from the witnesses at the scene.

Plaintiff argues that the statements by Plaintif and his wife "must be accepted as accurately describing the sequence of events," and thus probable cause did not exist.  He further states that any assessment of credibility must be "left to the jury, not the judge."  Plaintiff, however, misses the point.  The question is not whether a judge or jury could find the statements credible today, but whether, in light of the evidence available to Officer Leveille, he had probable cause for Plaintiff's arrest.  Certainly an officer is not required to construe the accused's claims of innocence in the light most favorable to him when answering that question.  Leveille's failure to credit the stories of Plaintiff and his wife does not establish bad faith or a knowing misstatement of material facts.  Moreover, as with Officer Kanitra, Plaintiff had ample opportunity to bring the statements of his wife and neighbors to the judge's attention at the preliminary examination.

Plaintiff cannot establish any of the exceptions to the collateral-estoppel doctrine's bar to a plaintiff's re-litigation of his probable cause determination against Officer Leveille, and thus his claims against Leveille fail as a matter of law.  Magistrate Judge Morgan's recommendation to the contrary is REJECTED, and summary judgment is GRANTED in favor of Defendant Leveille.

*Officer Saab*[6]

Plaintiff has provided evidence that Officer Saab fabricated evidence in order to manufacture probable cause. Specifically, both Plaintiff and his wife claim to have overheard Saab coaching Walker to claim that Plaintiff had pointed a gun at Walker. Thus, at least at first glance, Plaintiff's claims against Saab appear to fall within a recognized exception to collateral estoppel.

Defendants argue, however, that because the state court did not consider statements from Saab during the preliminary examination, and instead relied only on Walker's testimony, this case squarely falls under the Sixth Circuit's recent *Molnar* decision. In *Molnar*, the court emphasized that the issue of "*whose* statements the state court relied on to establish probable cause" is critical to determining whether collateral estoppel applies. *Molnar*, 359 F. App'x at 627. Because the state court exclusively relied on the testimony of the victim, collateral estoppel barred the plaintiff's claims. *Id.* Defendant argues the same analysis applies here.

Plaintiff contends, as Magistrate Judge Morgan suggested, that *Molnar* is distinguishable because although the state court heard testimony only from Walker, the *evidence* advanced by Walker was fabricated by Officer Saab.

It would be imprudent to extend *Molnar's* analysis to circumstances such as these, where Plaintiff has offered evidence that the "victim" whose testimony was relied upon in establishing probable cause was serving merely as a proxy to advance testimony fabricated by Defendant Saab. *See Darrah,* 255 F.3d at 311 (holding that collateral estoppel does not bar plaintiff's claim that the officer made materially false statements that formed the basis of the state court's probable cause

---

[6]This analysis incorporates Defendants' Objection #5 (the evidence does not support a finding that Officer Saab conspired to manufacture probable cause). For the reasons described herein, that objection is OVERRULED.

determination); *Taylor v. City of Detroit*, 368 F. Supp. 2d 676, 685-89 (E.D. Mich. 2005) (holding that collateral estoppel did not bar § 1983 claim for false arrest where probable cause finding was based on witness testimony that was falsified at the behest of defendant officer).

Alternatively, Defendants contend that Plaintiff's claim that Officer Saab fabricated Walker's story is "simply unbelievable" because Plaintiff has made "no attempt to explain how Defendant Saab knew Plaintiff had a gun in his pocket, or how Mr. Walker knew exactly what the gun looked like." Although Plaintiff may have difficulty explaining these facts to a jury, that does not entitle Defendant Saab to summary judgment at this time.

**b.    Objection #2 - Incorrect Legal Standard**

In Objection #2, Defendants assert that the Magistrate Judge applied the incorrect legal standard in denying the individual officers' motion for summary judgment. Magistrate Judge Morgan held that the officers were not entitled to summary judgment because "a rational trier of fact could find that there was no probable cause to arrest [P]laintiff." But, as Defendants correctly note, the Sixth Circuit has held that officers are entitled to qualified immunity unless "*no* reasonably competent officer would have taken the same action." *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007). Even this revised standard, however, does not provide immunity to Officer Saab.[7]

It is well established that a reasonable police officer would know that fabricating probable cause violates a suspect's clearly established Fourth Amendment right to be free from unreasonable

---

[7]Even if they were not entitled to judgment on the basis of collateral estoppel, Officers Kanitra and Leveille would be entitled to qualified immunity protection under this corrected standard. There is simply no evidence that Kanitra or Leveille conspired to manufacture probable cause, or that they *knew* of Saab's fabrication of evidence and failed to intervene. Thus, when construing the facts and inferences in Plaintiff's favor, it cannot be said that *no reasonable officer* would have taken the same action. This conclusion is buttressed by the fact that Conrad and the Desk Sergeant believed that the available evidence established probable cause, as did the state court after hearing the testimony at the preliminary examination.

seizures.  *See Spurlock v. Satterfield*, 167 F.3d 995, 1006-07 (6th Cir. 1999).  Construing the facts in the light most favorable to Plaintiff, Officer Saab conspired with Walker to fabricate probable cause for Plaintiff's arrest.  Accordingly, Saab is not entitled to qualified immunity.  *Id.*

Because the Magistrate Judge did apply the wrong legal standard, Defendants' Objection #2 is SUSTAINED.  But this does not effect the outcome as to Defendant Saab.

## IV.  CONCLUSION

Having reviewed each objection and conducted a *de novo* review of the record and law, Defendant's Objections #1-4 are SUSTAINED, Objection #5 is OVERRULED; Magistrate Judge Morgan's Report is ADOPTED IN PART as to the analysis and conclusion regarding Defendants City of Dearborn and Officer Saab, and REJECTED IN PART as to the analysis and conclusion regarding Defendant Officers Kanitra and Leveille; Defendants' Motion For Summary Judgment is GRANTED IN PART as to the Dearborn Police Department, City of Dearborn, Officer Kanitra and Officer Leveille and DENIED IN PART as to Officer Saab.

**IT IS SO ORDERED.**

Date:  July 28, 2010                               s/ John Feikens
John Feikens
United States District Judge

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on July 20, 2010, by U.S. first class mail or electronic means.

s/Carol Cohron
Case Manager

21